IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ROY FALK, LEE KRATZER and BARBARA McRAE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS CORPORATION, a Delaware Corporation<br><br>Defendant. | No. C 07-01731 WHA<br><br>**ORDER ON MOTION TO DISMISS** |

## INTRODUCTION

In this putative class action against General Motors Corporation, plaintiffs bring suit for defective speedometers in their GM trucks and sports utility vehicles, alleging violations of California's Consumers Legal Remedies Act and Unfair Competition Laws. Plaintiffs also allege damages due to fraud by omission and unjust enrichment. Defendant's motion to dismiss for failure to state a claim under Rules 12(b)(6) and 9(b) is hereby **DENIED** as to the CLRA, UCL and fraud by omission claims and **GRANTED** as to the unjust enrichment claim.

## STATEMENT

Plaintiffs are California residents who purchased trucks or sport utility vehicles from GM between 2003 and 2007. In the case of each plaintiff, the speedometer on his or her vehicle ceased to function properly after the expiration of the vehicle's warranty. Plaintiffs claim

1  damages suffered on account of these broken speedometers.

2  Plaintiff Ray Falk purchased a new GMC Sierra from a dealer in 2003. In February of
3  2007, after driving approximately 45,000 miles, Falk noticed that his speedometer was sticking,
4  moving in jerky increments, and reading incorrect speeds. Falk claims that the speedometer
5  would register a speed of 20 miles per hour while he was completely stopped but would read 120
6  miles per hour while he drove at the speed of traffic. When Falk brought his car to a dealership,
7  he was told that he would have to pay $500 to repair his speedometer (Compl. ¶ 7).

8  Plaintiff Lee Kratzer purchased a new GMC Yukon XL in 2003. In early 2007, after
9  driving 46,000 to 47,000 miles, Kratzer's speedometer failed. Kratzer states that when his
10 vehicle was stopped, the speedometer would read 120 miles per hour; when driving on the
11 freeway, however, the speedometer sometimes read a speed of five miles per hour. Kratzer
12 brought the car to a dealer, who also asked for $500 to repair Kratzer's speedometer, but Kratzer
13 negotiated a price of $100 to fix the problem (*id*. at ¶ 8).

14 Plaintiff Barbara McRae bought a 2004 Chevy Tahoe in April of 2004. In March of
15 2007, McRae claims that she saw her speedometer reading 120 miles per hour while she was
16 driving at normal traffic speeds on the freeway. Her dealer told her that, since she had driven
17 54,000 miles, her speedometer was no longer covered by warranty. McRae therefore agreed to
18 pay $325 to have her speedometer replaced (Compl. ¶ 9).

19 In the complaint, plaintiffs present a number of consumer postings on the Internet which
20 detailed consumer problems with GM speedometers. In many of the postings, car repair shops
21 were quoted as saying that the entire instrument cluster panel would have to be replaced.
22 Several of the postings referenced "hundreds of similar complaints," and some of the postings
23 concluded that there must be a "widespread problem with similar GM models." In many, the
24 customers indicated that their speedometer problems were intermittent. Some could be fixed by
25 "stopping and restarting the car," others were "more noticeable in the 55 to 75 mph range," and
26 some were just "erratic." Many of the consumers who posted complaints stated that they called
27 GM to complain, but that GM provided no information beyond a referral to the nearest GM
28

2

dealer. In the cases where the customer did bring their car to a mechanic, the customer was often charged several hundred dollars to repair their vehicle (Compl. ¶ 21).

Although plaintiffs raise a number of claims relating to the allegedly defective nature of GM's speedometers, plaintiffs do not rely on any warranty or strict products liability theories. Rather, plaintiffs rely on the tort proposition that GM knowingly sold vehicles with defective speedometers. Plaintiffs first allege that GM violated the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750(a)(5) & (7) when it "represented that its Trucks and speedometers in its Trucks had characteristics and benefits that they do not have, and represented that its Trucks and speedometers in its Trucks were of a particular standard, quality or grade when they were another." In support of this argument, plaintiffs allege that "Defendant knew that its Trucks and speedometers were defectively designed or manufactured, would fail prematurely and were not suitable for their intended use" (Compl. ¶¶ 43, 45).

Plaintiffs also allege that defendant violated California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq.*, which bars "unfair competition" such as an "unlawful, unfair or fraudulent business act or practice" or "unfair, deceptive, untrue or misleading advertising" (Compl. ¶ 54).

Additionally, plaintiffs plead a claim of fraud by omission, based on defendant's alleged knowledge that "the speedometers installed in its Trucks were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use," and defendant's alleged concealment of this information. Finally, plaintiffs raise a claim of unjust enrichment based on GM's alleged enrichment at the expense of its customers in California (Compl. ¶¶ 64–65).

The complaint was filed as a class action on March 27, 2007, on the behalf of all California residents who had purchased or leased certain GM trucks and sport utility vehicles between 2003 to 2007. Defendant GM filed this motion to dismiss pursuant to Rules 12(b)(6) and 9(b). Subject-matter jurisdiction is appropriate here under 28 U.S.C. 1391(c), because plaintiffs state claims in excess of $5,000,000 for the putative class and because plaintiffs are citizens of California, while GM is a Delaware corporation.

3

**ANALYSIS**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiffs' obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 125 S.Ct. 1955, 1964–65 (May 21, 2007) (internal citations omitted). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Rule 8(a)(2) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief." All material allegations of the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996).

Allegations of fraud, however, must meet the heightened pleading standards of Rule 9(b). These require allegations of particular facts going to the circumstances of the fraud, including time, place, persons, statements made and an explanation of how or why such statements are false or misleading. *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547–48 n.7 (9th Cir. 1994) (en banc).

**1.     CLRA.**

The California Consumers Legal Remedies Act bans certain practices that the California legislature has deemed to be "unfair" or "deceptive." The CLRA, which plaintiffs cite in their brief, bars certain unfair acts "undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." In particular, the relevant portions of the act ban:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

4

> [(7)] Representing that goods or services are of a particular
> standard, quality, or grade, or that goods are of a particular style or
> model, if they are of another.

Cal. Civ. Code § 1750(a)(5,7).

### A. *Bardin* and *Daugherty* Do Not Preclude CLRA Claim For Unlawful Omission When A Duty To Disclose Exists

GM bases much of its argument on two recent California Court of Appeal decisions with similar fact patterns: *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006), and *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255 (2006). Both dismissed suits for car defects that only became apparent after the expiration of the car's warranty. In *Bardin*, the plaintiffs sued under the CLRA for defects in their cars' exhaust manifolds. DaimlerChrysler had built the manifolds with steel instead of cast iron, the more durable industry standard, causing more frequent failure. No safety allegations were alleged: the plaintiffs claimed only monetary damages. The *Bardin* court dismissed the plaintiffs' unlawful omission claim on a demurrer, saying that the CLRA only bans omissions when a duty to disclose exists. The plaintiffs "neither alleged facts showing [Honda] was bound to disclose its use of tubular steel exhaust manifolds, nor alleged facts showing [Honda] ever gave any information [that would have misled the public on this issue]." *Bardin*, 136 Cal. App. 4th at 1276.

In *Daugherty*, the plaintiffs presented a CLRA claim for engine defects that failed to manifest themselves until long after the warranty had expired. According to plaintiffs' allegations, certain Honda engines had a defect which would result in the dislodgement of a front balancer shaft oil seal. The plaintiffs alleged no safety concerns, aside from the cost of replacing damaged parts and engines. Holding that "nondisclosure [is not] applicable in the absence of a related representation or disclosure obligation," the *Daugherty* court dispensed with the plaintiffs' unlawful omission claim on a demurrer, since the defendant had made no representations and had no duty to disclose an alleged defect. *Daugherty*, 144 Cal. App. 4th at 834. The court made particular note of the fact that "the complaint [was] devoid of factual allegations showing any instance of physical injury or any safety concerns posed by the defect," so the alleged defect posed no "unreasonable risk." *Id*. at 836.

5

In both of these cases, the court's decision to dismiss a claim for unlawful omission rested on the lack of a duty to disclose. Both *Bardin* and *Daugherty* allow CLRA claims for certain omissions, however, when the "omission [is] contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty*, 144 Cal. App. 4th at 824. *Daugherty* emphasized that an "unreasonable" safety risk would lead to a duty to disclose. Although plaintiffs do not allege any representations by GM about their speedometers, outside of the warranty, they do successfully plead that a duty to disclose existed here.

### B.  GM Had A Duty To Disclose The Alleged Defect

Plaintiffs can therefore successfully pursue a CLRA claim, despite *Daugherty* and *Bardin*, if GM was "obliged to disclose" the potential for problems with the speedometers in certain vehicles. A failure to disclose or concealment can constitute actionable fraud in four circumstances:

> (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact.

*LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997).

Plaintiffs do not plead a fiduciary relationship between themselves and GM. They therefore fail to state a duty to disclose under the first *Judkins* factor. Plaintiffs also fail to allege that any partial representations were actually made by defendant with regard to its speedometers at the time the speedometers ceased to function properly. In the case of all three plaintiffs, a warranty covered any defective components where problems occurred in the first three years or 36,000 miles of driving, whichever came first. However, all of the plaintiffs in this suit experienced their first problems with the speedometers *after* the expiration of the warranty. Although plaintiffs argue that defendant made "partial disclosures about the Trucks without revealing the defective speedometer," they do not plead facts that suggest any such representations occurred. Instead of alleging any representations on the part of GM, plaintiffs merely state that GM, when faced with questions about allegedly defective speedometers,

6

advised customers to "buy a service manual" or to get their speedometers "diagnosed" (Opp. 12). Such advice conveys no information about the GM trucks or speedometers; it therefore cannot be construed as a "partial representation" of anything to do with the trucks. Plaintiffs therefore fail to plead a duty to disclose under the fourth *Judkins* factor.

This order now turns to the second and third *Judkins* factors for a duty to disclose. Both require the existence of a material fact.

### C. A Defective Speedometer Is Material.

In order for non-disclosed information to be material, a plaintiff must show that "had the omitted information been disclosed, one would have been aware of it and behaved differently." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993). Materiality, for CLRA claims, is judged by the effect on a "reasonable consumer." *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003).

In *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1145 (N.D. Cal. 2005) (Wilken, J.), summary judgment for the defendants was denied in a CLRA vehicle design case, similar to the instant case, where the plaintiffs presented evidence that "they would not have bought the cars had they known of the increased failure risk." Plaintiffs rely on *Chamberlan* to establish that GM's failure to disclose information about its allegedly defective speedometers was an omission of a material fact. Plaintiffs claim that, had they known of the alleged defect in certain GM speedometers, they would have considered not purchasing the trucks or demanding a lower price (Compl ¶ 48). Plaintiffs' factual allegations differentiate the present case from both *Daugherty* and *Bardin*. Those two decisions argued that reasonable consumers would have had no expectations about the failed parts: "in order to be deceived, members of the public must have had an expectation or an assumption about the matter in question." *Daugherty*, 144 Cal. App. 4th at 838; *Bardin*, 136 Cal. App. 4th at 1275. Since the *Bardin* and *Daugherty* plaintiffs alleged no consumer expectations about the matter in question, it could not be material.

Here, however, plaintiffs allege that they did, in fact, have expectations about the product in question. Plaintiffs plead that a reasonable consumer would expect a speedometer to last for the life of a vehicle (Compl. ¶ 49). Like in *Chamberlan*, plaintiffs also argue that had they

7

known of the possibility of a failed speedometer, they would not have paid the full asking price for their GM vehicles. Common experience supports plaintiffs' claim that a potential car buyer would view as material a defective speedometer. That a speedometer is prone to fail and to read a different speed than the vehicle's actual speed, even a difference of ten miles per hour, would be material to the reasonable consumer, driver and passenger. Such a faulty speedometer easily would lead to traveling at unsafe speeds and moving-violation penalties.

In support of their claim, plaintiffs present several pages of quotations containing Internet complaints about GM speedometers, all for vehicles sold between 2003 and 2007. The amassed weight of these complaints suggests that plaintiffs' speedometer failures were not isolated cases. Instead, when viewed in the light most favorably to the plaintiffs, these collected complaints suggest strongly that there was a defect in the design of certain GM speedometers in the years from 2003 to 2007, which caused the speedometers to fail unexpectedly and without warning.

Accordingly, under Rule 12(b)(6), plaintiffs plead adequate facts to show that the possibility of a failed speedometer would be a material fact to a reasonable consumer. This conclusion of materiality would be, of course, subject to proof.[*]

### D. Exclusive Knowledge Of A Material Fact.

Under the second *Judkins* factor, a duty to disclose exists "when the defendant had exclusive knowledge of material facts not known to the plaintiff." *Judkins*, 52 Cal. App. 4th at 337. Plaintiffs allege that GM had exclusive knowledge of the putative defect in their speedometers. Plaintiffs claim that "[o]nly GM had access to the aggregate data from its dealers[,] only GM had access to pre-release testing data[, and] only GM had access to the numerous complaints from its customers." When accepted as true for the purposes of this Rule

---

[*] Moreover, plaintiffs successfully allege that the potential for failed speedometers constitutes a safety hazard. *Daugherty* stated that the "unreasonable risk alleged is merely . . . the cost of repairs in the event the defect ever causes an oil leak." *Daugherty*, 144 Cal. App. 4th at 836. Here, plaintiffs allege a far greater risk: the risk of inadvertent speeding, driving at unsafe speeds, and accidents. These risks are far more "unreasonable" than the monetary consequences in *Daugherty*, and further strengthen plaintiffs' arguments that their speedometers were truly defective. Plaintiffs therefore state sufficient facts to survive a Rule 12(b)(6) motion to dismiss on their allegation of defective speedometers.

8

12(b)(6) motion, plaintiffs' material allegations suffice to state a claim that GM had exclusive knowledge of the alleged defect in their speedometers. The record of complaints to GM between 2003 and 2007 show that GM was clearly aware of a problem with its speedometers; the record makes it equally clear that customers only became aware of the problem if they actually experienced it first-hand. Since, as plaintiffs argue, GM "was in a superior position to know" that its speedometers might fail, plaintiffs successfully state a CLRA claim for omission of a material fact which lay within GM's exclusive knowledge. This alone defeats GM's 12(b)(6) motion to dismiss for failure to state a claim.

It is true that prospective purchasers, with access to the Internet, could have read the many complaints about the failed speedometers (as quoted in the complaint). Some may have. But GM is alleged to have *known* a lot more about the defective speedometers, including information unavailable to the public. Many customers would not have performed an Internet search before beginning a car search. Nor were they required to do so.

### E.   Active Concealment Of A Material Fact.

The third *Judkins* factor creates a duty to disclose "when the defendant actively conceals a material fact from the plaintiff." 52 Cal. App. 4th at 337. Plaintiffs allege that GM violated a duty to disclose when it "actively concealed" an alleged defect in certain speedometers. To state a claim for active concealment, a plaintiff must plead the following five elements:

> (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

*Lovejoy v. AT & T Corp.,* 119 Cal. App. 4th 151, 157 (2004).

Plaintiffs support their active concealment claim with several different factual allegations. First, the fact that various GM customers complained between 2003 and 2007 yet GM never made any attempt to notify other customers or effect a recall, suggests that GM may have attempted to actively conceal the alleged defect in their speedometers. Plaintiffs also argue that "[w]here GM replaced the Trucks' speedometers pursuant to warranty provisions, GM

9

1  utilized equally defective speedometers and speedometer mechanisms such that the defect was
2  not corrected even though GM informed consumers that it was" (Compl. ¶ 24).  This claim
3  suggests that GM tried to gloss over the problems with its speedometers by replacing broken
4  ones with the exact same model of speedometer, thereby giving the impression that any defects
5  were unique cases.  This might very well constitute active concealment of a systematic problem.
6  Since plaintiffs provide some factual grounds for their claim of active concealment, and
7  considering that plaintiffs adequately plead a claim that the GM speedometers were defective,
8  plaintiffs' active concealment claim survives this Rule 12(b)(6) motion to dismiss.

9  In sum, plaintiffs provide sufficient facts to state a claim under the CLRA.  Although GM
10 made no overt representations that suggested plaintiffs' speedometers would last beyond a
11 certain point, it had a duty to disclose any known defects in the speedometers.  Under the CLRA,
12 plaintiffs adequately plead both that GM failed to disclose a material fact within its exclusive
13 control and that GM actively concealed the existence of a known defect in their speedometers.
14 GM's motion to dismiss plaintiffs' CLRA claims is therefore **DENIED**.

15  **2.    SECTION 17200.**

16 Plaintiffs claim that GM violated California's Unfair Competition Law.  The UCL
17 prohibits acts or practices which are (1) fraudulent, (2) unlawful, or (3) unfair.  Cal. Bus. & Prof.
18 Code § 17200.  Plaintiffs adequately plead claims under all three of these prongs of the UCL.

19  **A.    Fraudulent Conduct.**

20 In order to state a fraud claim under the UCL, a plaintiff must show that "members of the
21 public are likely to be deceived."  *Bardin v. Daimler Chrysler Corporation*, 136 Cal. App. 4th
22 1255, 1261 (2006).  Plaintiffs allege that members of the public are likely to be deceived because
23 GM violated its duty to disclose the potential for known defects in its speedometers.  Relying on
24 *Chamberlan*, plaintiffs argue that a reasonable customer would expect a speedometer to last for
25 the lifetime of a car and would have reconsidered the purchase if he or she had known of the
26 alleged defect.  *See Chamberlan*, 369 F. Supp. 2d at 1145.  As stated, plaintiffs adequately plead
27 that GM had a duty to disclose the existence of a known defect to its customers.  If GM had this
28 duty, yet failed to follow through with it, members of the public would very likely be deceived.

10

Therefore, when viewing plaintiffs' material allegations in the light most favorable to them, plaintiffs succeed in stating a fraudulent conduct claim under the UCL.

### B. Unlawful Practices.

Plaintiffs' unlawful practices claim is premised on a violation of the CLRA: plaintiffs allege that GM committed unlawful practices by violating the CLRA. As previously discussed, plaintiffs successfully plead violations of the CLRA. Although GM made no representations about its speedometers, other than its warranty, plaintiffs successfully plead that GM violated the CLRA by breaching its duty to disclose information about its defective speedometers. Therefore, when taking all of plaintiffs' allegations as true, GM has committed an unlawful practice under the UCL.

### C. Unfair Practices.

A business practice constitutes unfair competition "if it is forbidden by any law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made[,] or if it is unfair, that is, if it offends an established public policy or . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *People v. Duz-Mor Diagnostic Laboratory, Inc.*, 68 Cal. App. 4th 654, 658 (1998) (internal quotations and citations omitted). Plaintiffs plead only that GM's business practices were unfair insofar as GM allegedly violated the CLRA. As shown above, plaintiffs allege sufficient facts to state a CLRA claim; although they do not plead that GM made any representations about the quality of its speedometers, outside of its warranty, they plead sufficient facts to show that GM failed to meet its duty to disclose any known and material defects. This failure to disclose constitutes a violation of the CLRA, which in turn can be an unfair practice under the UCL. Plaintiffs therefore state an unfair practices claim under the UCL.

Accordingly, defendant's motion to dismiss is **DENIED** as to plaintiffs' unfair competition claims.

### 3. FRAUD BY OMISSION.

Allegations of fraud must meet the heightened pleading standards of Rule 9(b), which requires "specificity including an account of the time, place, and specific content of the false

11

representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 765, 764 (9th Cir. 2007). Clearly, a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim. Another judge in this district has recognized that a fraud by omission claim can succeed without the same level of specificity required by a normal fraud claim. *See, e.g.*, *Washington v. Baenziger*, 673 F.Supp. 1478, 1482 (N.D. Cal. 1987) (Weigel, J.) ("Where the fraud consists of omissions on the part of the defendants, the plaintiff may find alternative ways to plead the particular circumstances of the fraud. [F]or example, a plaintiff cannot plead either the specific time of the omission or the place, as he is not alleging an act, but a failure to act.") (internal citations and quotations omitted); *see also David K. Lindemuth Co. v. Shannon Financial Corp.*, 637 F.Supp. 991, 995 (N.D. Cal. 1986) (Weigel, J.). Accordingly, plaintiffs' fraud by omission claim will not be dismissed purely for failure to precisely state the time and place of the fraudulent conduct.

The elements of fraud in California are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004). Plaintiffs allege sufficient facts that, if taken as true, suggest that GM had a duty to disclose information about its defective speedometers. Plaintiffs also allege facts that show that defendant actively concealed and failed to disclose material facts that were in its exclusive knowledge. Plaintiffs show knowledge of falsity and intent to defraud by pleading facts that demonstrate that GM knew about the alleged defects, yet did nothing to fix them or to alert customers. The justifiable reliance element of the fraud by omission claim is easily satisfied. As pleaded by plaintiffs, a "reasonable customer" would not have paid the asking price had it been disclosed that the speedometer was defective; similarly, this same customer may have justifiably relied on GM's failure to disclose defects in the speedometer. Finally, plaintiffs allege damages for the expense of replacing their speedometers.

Plaintiffs adequately state a claim of fraud by omission. They allege that GM was bound by a duty to disclose material facts about its speedometers from 2003 to 2007. GM failed to

12

1  disclose this information, and plaintiffs reasonably claim that they suffered damages after
2  justifiably relying on GM's failure to disclose any defects with the speedometers. GM's motion
3  to dismiss the fraud by omission claim under Rules 12(b)(6) and 9(b) is therefore **DENIED**.

### 4. UNJUST ENRICHMENT.

Plaintiffs' fourth claim is for unjust enrichment. California courts appear to be split on whether unjust enrichment can be an independent claim or merely an equitable remedy. "The phrase 'unjust enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." *Melchoir v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003) (quoting *Lauriedale Assocs. Ltd. v. Wilson*, 7 Cal. App. 4th 1439, 1448 (1992)). Other California courts, however, have held that a plaintiff may state a claim for unjust enrichment, particularly where their claim seeks restitution where other remedies are inadequate. *See Ghirardo v. Antonioli*, 14 Cal. 4th 39, 50 (1996).

This order holds that the sole remedies available for the violations alleged have been discussed above, so there will be no occasion for resort to unjust enrichment. Defendant's motion to dismiss is **GRANTED** as to this claim.

### 5. STATUTE OF LIMITATIONS.

Finally, GM argues that Falk and Kratzer's CLRA and fraud claims are barred by the applicable statutes of limitations. Under the CLRA, "[a]ny action brought under the specific provisions of Section 1770 shall be commenced not more than three years from the date of the commission of such method, act or practice." Cal. Civ. Code § 1783. The statute of limitations for a claim sounding in fraud is similarly three years and "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting fraud or mistake." Cal. Civ. Proc. Code § 338(d). Both Falk and Kratzer purchased their GM products in 2003 (Compl. ¶¶ 7–8).

GM argues in effect that plaintiffs Falk and Kratzer should have been aware of the alleged defect in the speedometer at the time they purchased their cars. The crux of defendant's argument is that plaintiffs plead that GM was on notice of the defect in the speedometers as early as 2003. Plaintiffs also plead that a number of Internet postings should have alerted GM to the defect. Defendant contends that if such information were posted on a public website, plaintiffs

13

should have had access to it at the same time GM did. Defendant's argument ignores that none of the Internet postings quoted in the complaint showed what dates they were posted or when the problems occurred, save for an email from GM dated in 2006 (*id*. at ¶ 21). Plaintiffs also plead that GM, as the company who produced the trucks, had superior knowledge and should have known that the speedometers were defective. Accordingly, defendant's argument that plaintiffs should have been on notice of the defect when they purchased the vehicles fails at the pleading stage. Plaintiffs Falk and Kratzer's claims are not barred by the statute of limitations, at least at the pleading stage.

## CONCLUSION

In closing, it is worth saying that ordinarily an express warranty begins and ends the manufacturer's duty to replace an item like the one in question. Here, however, the large number of articulate and credible Internet postings set forth in the complaint strongly indicates that GM knew of the problem and very likely had far more information on a material defect. At least at the pleading stage, this complaint states a claim that GM knew and concealed that its speedometers were defective and likely to fail far more often than expected by the consuming public. Discovery may or may not bear this claim out. But enough is alleged to authorize plaintiffs and their counsel to proceed to take discovery.

For the reasons given, defendant's motion to dismiss plaintiffs' unjust enrichment claim is **GRANTED** without leave to amend. Plaintiffs, however, allege sufficient factual support for all of their other claims. Although *Daugherty* and *Bardin* bar CLRA claims for omissions when there is no duty to disclose and when defendants have made no representations to the contrary, plaintiffs adequately plead that GM had a duty to disclose here, which it violated. Defendant's motion to dismiss under Rules 12(b)(6) and 9(b) is therefore **DENIED** as to plaintiffs' CLRA, UCL and fraud by omission claims. Discovery may begin immediately.

**IT IS SO ORDERED.**

Dated: July 3, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

14